IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| VALLEY BOYS, INC., | ) | 8:14CV3148 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

The plaintiff, Valley Boys, Inc. ("Valley Boys"), is a roofing contractor in Omaha, Nebraska. Several months after a damaging hailstorm in April 2013, Valley Boys allegedly took assignments from 27 homeowners whose properties were insured by the defendant, Allstate Insurance Company ("Allstate"). Allstate has refused to recognize the alleged assignments or to make payment to Valley Boys.[1]

The assignment documents, which are dated between September 2013 and February 2014, state:

> The undersigned, hereinafter referred to as the "Client(s)", and Valley Boys Inc. d/b/a Valley Boys Roofing, hereinafter referred to as the "Valley Boys" for and in consideration for performing the work pursuant to the contract executed by Client(s) and Valley Boys, as well as any change orders executed thereafter, and for other good and valuable consideration, the receipt and sufficiency whereof is hereby mutually acknowledged, and intending to be legally bound, hereby transfer, assign

---

[1] This action was commenced in the District Court of Douglas County, Nebraska, on June 1, 2014, but was removed to federal court on July 23, 2014, based on diversity of citizenship. (Filing 1.)

and set over onto Valley Boys, all of the right, title and interest of the undersigned Client(s) in and to those certain insurance claim(s) made by _____ (Client(s) Name) designed [*sic*] under Claim No.: _____ covering loss sustained at the property known as _____ (address) during Client's ownership thereof, including but not limited to any and all insurance claims asserted thereunder and proceeds thereof. Client(s) understands that his/her/their/it's [*sic*] insurance company may try to pay the insurance proceeds to the Client(s) and/or Client's mortgage lender, if any. Client(s) agrees to cooperate with Valley Boys to have those insurance proceeds released to or made payable to Valley Boys.

(Filing 1-1 at 28-54.)[2] Each executed document contains a unique claim number, which presumably corresponds to Allstate's claim file.

It is alleged in Count I of the complaint that "[t]he Insureds and/or Valley Boys, as assignee, promptly and properly made claims to Allstate for insurance benefits under the Policies" and that "Allstate breached the Policies by failing to pay Valley Boys all benefits due and owing under the Policies." (Filing 1-1, ¶¶ 14, 18.) Valley Boys claims it is owed at least $569,065.14 for various "line-items" on estimates and invoices that it allegedly submitted to Allstate, including charges for "contractor overhead and profit," "heat stack base," "starter shingles," "ice and water shield and decking for ice and water shield," "ladder jacks, ladder labor, and OSHA fall protection for gutters," "residential supervision/project management," "OSHA fall protection for roof," "labor to file and pull building permit," "OSHA personal protective equipment (hard hats, eye protection, and protective gloves)," "final yard cleanup," "fuel surcharge for delivery from roofing supplier," "fuel surcharge for delivery of dump trailer and driveway protection for dump trailer," "content manipulation for roof and content manipulation for deck," "sanding the deck before new stain is applied," "stain and finish stair tread and stringer/stain wooden post and

---

[2] The plausibility of a plaintiff's claims may be assessed on a motion to dismiss by considering exhibits attached to the complaint. *See Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012).

beam on deck," "mask and prep for paint per linear foot and mask or cover per square foot," "pressure washing of the deck," "drip edge/gutter apron," "heat cap and collar," "two story high charge," skylight," "painted vents," and "painted gutters." (Filing 1-1 at 7-19.)

Valley Boys alleges in Count II of the complaint that "[u]nder the insurance policies, Allstate owes the Insureds and Valley Boys, as the assignee of their claims, the duty of good faith and fair dealing to fully and fairly adjust their claims." (Filing 1-1, ¶ 116). It is claimed that Allstate breached its duty by:

    a.    Conducting incomplete, inadequate, and/or outcome-oriented investigations into the Losses in order to avoid paying all benefits due;

    b.    failing to release the depreciation in a timely manner when the amount owed was undisputed;

    c.    refusing to consider Valley Boys' estimates for the Losses;

    d.    refusing to communicate with Valley Boys regarding [*sic*] to schedule re-inspections or to resolve disputes as to the amount of loss and the scope of estimates;

    e.    refusing to recognize Valley Boys' valid assignments of the Claims;

    f.    misleading the Insureds and Valley Boys as to the terms, conditions, and coverage under the Policies for the Losses in an attempt to drive a wedge between Valley Boys and its Insureds;

    g.    denying coverage, delaying payment, refusing to pay, and failing to pay for the repairs and line items set forth herein as a matter of course, rather than as a result of fully and fairly investigating the losses; [and]

>   h.      failing to pay industry standard overhead and profit as a matter of course.

(Filing 1-1, ¶ 117.)

Allstate has moved to dismiss Valley Boys' complaint and has presented evidence that the homeowners' policies each state that "[a]ssignment of this policy shall not be valid except with the written consent of Allstate." (Filing 9-1 at 73).[3] For the reasons discussed below, the motion to dismiss will be denied.[4]

   *1. Breach of Contract*

In Nebraska, as elsewhere, it is the rule that "[a]fter a loss has occurred the insured may assign the right to recover for same without the consent of the insurance company, and the assignee may recover in his own name, although the policy was not assignable." *Star Union Lumber Co. v. Finney*, 52 N.W. 1113 (Neb. 1892) (syllabus by the court). *See also* 3 Couch on Insurance § 35:8 (3d ed. 2014) ("Although there is some authority to the contrary, the great majority of courts adhere to the rule that general stipulations in policies prohibiting assignments of the policy, except with the consent of the insurer, apply only to assignments before loss, and do not prevent an assignment after loss, for the obvious reason that the clause by its own terms

---

[3] "Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Id.* (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir.2003)).

[4] Allstate's request for oral argument will also be denied. *See* NECivR 7.1(c) ("In general the court does not allow oral argument ... on motions.").

ordinarily prohibits merely the assignment of the policy, as distinguished from a claim arising under the policy, and the assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the transfer of a right to a money claim.") (footnotes omitted); Annotation: *Claim under contract of property insurance as assignable after loss*, 56 A.L.R. 1391 (Supp. 2014) ("There seems to be no dissent whatever, except in a very few early cases, from the now universally accepted rule that, after a loss in respect of insured property has been incurred, the claim to recover that loss may be effectively assigned by the insured, so as to vest in the assignee the absolute right to the insurance, provided, of course, the insured himself had that right at the time when the loss was incurred, and that the assignment itself was otherwise valid."). Cf. *Folgers Architects Ltd. v. Kerns*, 633 N.W.2d 114, 126-27 (Neb. 2001) (anti-assignment clause of contract for architectural services, requiring owner or architect to obtain written consent for assignment of "any interest" in the contract, did not require architects to obtain written consent before assigning their breach of contract claim against owner, where the assignment occurred after the alleged breach of payment obligations).

Allstate contends the rule of law stated in *Star Union* was abrogated by the Nebraska Supreme Court in *Obstetricians-Gynecologists, P.C. v. Blue Cross and Blue Shield of Nebraska*, 361 N.W.2d 550 (Neb. 1985), but the Court only held in that case that a provision in a health care contract which prohibited the assignment of amounts payable to the subscriber did not contravene public policy.[5] In fact, the Nebraska Supreme Court distinguished the *Star Union* decision and indicated that a holding made with reference to a fire insurance policy did not represent a statement of public policy concerning the validity of an anti-assignment clause in a health care contract. *Id.* at 554.

---

[5] The insurer made direct payments to "participating providers" who agreed to accept specified amounts as payment in full for medical services provided, but when a subscriber visited a "nonparticipating provider," the insurer would only pay benefits to the subscriber.

The anti-assignment clause in *Obstetricians-Gynecologists* expressly stated: "No assignments of any *amounts payable* under this Contract shall be recognized or accepted by, or binding upon, the Company." 361 N.W.2d at 552 (emphasis supplied). By contrast, Allstate's homeowner's insurance policy, and the fire insurance policy at issue in *Star Union*, prohibit the insured from assigning the *policy* without the insured's consent. These provisions are not comparable. Because the assignments Valley Boys allegedly received from Allstate's insureds are limited to "claims made" by the insureds, the anti-assignment clause will not defeat Count I of the complaint in which Valley Boys, as assignee, seeks to recover "benefits due and owing [to the insureds] under the Policies." (Filing 1-1, ¶ 19.)

Additional arguments made Allstate in seeking dismissal of Count I will not be considered by the court because they depend on unsubstantiated facts that are not alleged by Valley Boys.[6] "When ruling on a motion to dismiss, the court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Packard v. Darveau* 759 F.3d 897, 899 n. 2 (8th Cir. 2014) (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).

*2. Bad Faith*

Regarding Count II of the complaint, Allstate argues that the bad faith claim fails as a matter of law because there was no breach of contract.[7] In support of this argument, Allstate asserts that "[t]he Complaint here concedes that actual cash value

---

[6] For instance, Allstate asserts that "[t]he Insureds already received money from Allstate and repairs from Valley Boys ...." (Filing 8 at 10.)

[7] This argument assumes that a bad faith claim is always derivative in nature, but under Nebraska law this is not true. *See LeRette v. American Medical Sec., Inc.*, 705 N.W.2d 41, 48 (Neb. 2005) (insureds were not required to prevail on their breach of contract claim as a prerequisite to prevailing on their bad faith claim where the "core set of facts" for the claims differed).

payments were received by the Insureds on each claim" and "there is no allegation that the Insureds 'actually and necessarily spent' *any* amounts beyond the initial actual cash payments." (Filing 8 at 11-12.) However, Valley Boys' supposed "concession" regarding payments received by the insureds is not evident in the complaint, which does not even reference any payments received by the insureds, let alone use the term "actual cash value."

Allstate further notes, while "expressly reserv[ing]" argument, that the alleged assignments "are limited on their face to 'all insurance claims asserted thereunder and proceeds thereof,' and do not include any assignment of non-contractual claims or rights, such as a bad faith claim." (Filing 8 at 14, n. 4.) As already discussed in connection with Count I, Allstate is correct that the alleged assignments are limited to "claims made" by the insured. The documents attached to the complaint indicate that the insureds ("Clients") "transfer, assign and set over onto Valley Boys, all of the right, title and interest of the undersigned Client(s) in and to those certain insurance claim(s) made by _____ (Client(s) Name) designed [*sic*] under Claim No.: _____ covering loss sustained at the property known as _____ (address) during Client's ownership thereof, including but not limited to any and all insurance claims asserted thereunder and proceeds thereof." (Filing 1-1 at 28-54.)

The history of insurance bad faith claims in Nebraska has been summarized by the Nebraska Supreme Court as follows:

> In *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991), *disapproved on other grounds*, *Wortman v. Unger*, 254 Neb. 544, 578 N.W.2d 413 (1998), we recognized a tort of bad faith refusal to "settle" a claim with an insured policyholder. In connection with the tort of bad faith, we stated that "a first-party bad faith cause of action is based upon allegations that the insurer, in bad faith, refuses to settle with its own policyholder insured, who thereby suffers some type of direct loss." *Id.* at 54, 464 N.W.2d at 776. In *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 469 N.W.2d 129 (1991), we noted that it is the breach of the covenant of good faith and fair dealing from which liability in the

> tort of bad faith springs. We have stated that in order to establish a claim for bad faith, a plaintiff must show an absence of a reasonable basis for denying the benefits of the insurance policy and the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Williams v. Allstate Indemnity Co.*, 266 Neb. 794, 669 N.W.2d 455 (2003); *Radecki v. Mutual of Omaha Ins. Co.*, 255 Neb. 224, 583 N.W.2d 320 (1998).

*LeRette*, 705 N.W.2d at 47. In *Ruwe*, "the Nebraska Supreme Court [also] implicitly recognized that a bad faith claim could include a delay in the settlement of benefits." *Tara Hills Villas v. Columbia Ins. Group*, No. A-07-935, 2008 WL 2839036, at *6 (Neb.App. July 22, 2008) (unpublished opinion).

The alleged assignments in this case do not specifically include any tort claims belonging to the insureds, nor do they purport to provide Valley Boys with any rights to or interest in the homeowners' insurance policies, which are the source of the implied covenant of good faith and fair dealing. Thus, Allstate might have a good argument, should it choose to make it at a later date. As the matter now stands, however, the court will not consider dismissing the bad faith claim on the basis of a "reserved" argument that required no response from Valley Boys.[8] *See* NECivR 7.1(a)(1)(A) ("The [moving party's] brief must concisely state the reasons for the motion and cite to supporting authority. A party's failure to brief an issue raised in a motion may be considered a waiver of that issue.").

Accordingly,

---

[8] Similarly, the court will not consider another "reserved" argument that "bad faith claims ... are not subject to assignment as a legal matter." (Filing 8 at 14.)

IT IS ORDERED:

1.    Defendant's motion to dismiss (filing 7) is denied.

2.    Defendant's motion for oral argument (filing 15) is denied.

DATED this 5th day of November, 2014.

BY THE COURT:

s/ Richard G. Kopf
Senior United States District Judge

---

\* This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.